United States District Court
Southern District of Texas
**ENTERED**
August 26, 2022
Nathan Ochsner, Clerk

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | | |
|---|---|---|
| Alvin George West Jr., <br>    *Plaintiff*, | § <br> § <br> § | |
| v. | § <br> § | Civil Action H-21-2395 |
| Kilolo Kijakazi,[1] <br> Acting Commissioner of the <br> Social Security Administration, <br>    *Defendant*. | § <br> § <br> § <br> § | |

## Memorandum and Recommendation

Alvin George West Jr. appeals the Social Security Administration (SSA) Commissioner's final decision denying his application for social security benefits. ECF No. 1. Pending before the court are Plaintiff's Motion for Summary Judgment, ECF No. 12, and Defendant's Motion for Summary Judgment, ECF No. 15. These motions are before the undersigned magistrate judge pursuant to 28 U.S.C. § 636(b)(1). Having considered the motions, administrative record, and applicable law, the court recommends that the final decision of the Commissioner be affirmed.

---

[1] Kilolo Kijakazi is Acting Commissioner of the SSA and is automatically substituted as Defendant under Federal Rule of Civil Procedure 25(d). *See also* 42 U.S.C. § 405(g).

### 1. Background and Procedural Posture

West applied for disability insurance benefits on December 9, 2017.[2] Tr. 324–29. The SSA denied West's application on May 24, 2018. Tr. 110. On February 8, 2019, the application was denied on reconsideration. Tr. 163–64. At West's request, Administrative Law Judge (ALJ) Evangeline Mariano-Jackson held a hearing on August 29, 2019, in Houston, Texas. Tr. 140–41, 30–60. The ALJ issued a decision on October 25, 2019, finding that West was not disabled from May 25, 2017, through June 30, 2018. Tr. 114–23. On April 15, 2020, at West's request, the Appeals Council remanded the case to the ALJ. Tr. 129–30. The Appeals Council found an error in the ALJ's determination of the date West was last insured which should have been June 30, 2019. *Id.* The Appeals Council further ordered evaluation of West's mental impairments and his residual functional capacity (RFC). *Id.* The Appeals Council also required the ALJ to obtain new evidence from a vocational expert (VE) based on the expanded record. *Id.*

On November 24, 2020, the ALJ held a second hearing. Tr. 61–97. The ALJ issued a decision on December 23, 2020, finding that West was not disabled from May 25, 2017, through June 30, 2019. Tr. 12–24. The Appeals Council denied West's request for review. Tr. 1-5. West timely appealed the ALJ's decision in this

---

[2] The court notes that there is also an application for Supplemental Security Income Benefits in the record. Tr. 355–64. Because neither the decision now under review nor the parties' briefing addresses it, the court will consider only West's disability insurance benefits application.

court when he filed a complaint and application to proceed in forma pauperis on July 12, 2021. *See West, Jr. v. Comm'r of Soc. Sec.*, H-21-mc-1634, ECF No. 1 (S.D. Tex. July 12, 2021).

West claimed that he became disabled on May 25, 2017. Tr. 324. West was born on April 9, 1966, and was fifty-one years old on the alleged disability onset date. *Id.* West has an education through the eleventh grade. Tr. 66. West did not work from May 25, 2017, to June 30, 2019. Tr. 67–68. West previously worked as a residential, commercial, and maintenance electrician. Tr. 82.

## 2. Hearing

At the hearing on November 24, 2020, the ALJ heard testimony from West and a vocational expert (VE). Tr. 61–97. West was represented by an attorney. Tr. 64.

West testified that he suffered from pain in his hands and feet and that that he had osteoarthritis in both hands that caused him to drop things. Tr. 68. He also had osteoarthritis in his left knee, which limited his ability to stand or walk to thirty minutes at a time. Tr. 69. West testified that in an eight-hour workday he could stand or walk no more than three to four hours. Tr. 70. He further testified that his knee pain limited him to sitting thirty to forty minutes at a time. *Id.*

West testified that his foot pain was due to diabetic nerve damage, Tr. 68–69, and that his feet always hurt. Tr. 70. His feet would swell depending on whether he

wore shoes. Tr. 71. He would elevate his feet to waist level or soak them in Epsom salt water to relieve the swelling. *Id.* He took insulin shots five to six times a day. Tr. 81.

West testified that he could not climb three flights of stairs without taking breaks totaling fifteen to twenty minutes and that he could not climb ladders or scaffolding because he would fall off. Tr. 72–73. He could climb handicap ramps. Tr. 73. West had used a non-prescribed cane to walk for about a year. Tr. 79, 82. He testified that he could lift a twenty-pound bag or a gallon of a milk but would likely drop either item. Tr. 74. He conceded that he could carry a loaf of bread without dropping it. *Id.* West testified that he tried not to use his hands for any purpose other than eating. Tr. 75. He frequently dropped cell phones and would drop a screwdriver if he attempted to use it. Tr. 75–76. He testified that he did household chores like washing the dishes for an hour or two per day. Tr. 76.

West testified that he could not go to a grocery store due to feelings of anxiety. Tr. 73. He testified that being around large numbers of people triggered his anxiety. Tr. 76. Because of his anxiety he was afraid to go to public places. Tr. 77. His anxiety prevented him from being able to regularly interact with people in public. Tr. 78. He testified that his memory was sufficient to recall a news program after he watched it. Tr. 77. He could not watch a thirty-minute television show without being distracted. *Id.* He could not refocus on a movie after he left the room. Tr. 78.

4

West admitted to prior use of marijuana and methamphetamine over ten years before the hearing. Tr. 79–80. He testified to being on gabapentin for a couple of years. Tr. 80. West testified that he was hospitalized for depression in August of 2018. *Id.*

The ALJ determined that West's past relevant work was as a maintenance electrician, residential construction electrician, commercial construction electrician, and in maintenance. Tr. 82. The VE testified that, under the Dictionary of Occupation Titles (DOT), those jobs would be classified as maintenance electrician and electrician. *Id.*

The ALJ asked the VE what work a hypothetical individual of the same age, education, and vocational background as West could perform if they were limited to medium work; could frequently climb ramps or stairs, stoop, kneel, crouch, or crawl; could occasionally climb ladders, ropes, or scaffolds; could frequently, but not constantly finger bilaterally; could carry out detailed but not complex instructions; could not perform in a fast-paced production environment; and could frequently, but not constantly interact with supervisors, coworkers, and the public. Tr. 82–83. The VE testified that such a person would not be able to do any of West's past relevant work. Tr. 83.

The VE testified that West's work history limited his transferable skills to the electrical industry. Tr. 83. The VE testified that electrician's helper was the only job

to which West's skills would transfer. *Id.* The VE testified that the job of electrician's helper was performed at a medium exertional level and that there were over 92,000 such jobs available nationally. Tr. 84–85.

The VE testified that an individual with the ALJ's proposed RFC would also be able to work unskilled, medium exertion level jobs as a laboratory equipment cleaner, warehouse worker, and linen clerk. Tr. 85. Those jobs were available in significant numbers nationally. *Id.* The ALJ altered her hypothetical to limit the individual to being off-task twenty percent of the workday due to lapses in concentration and pain symptoms. *Id.* The VE testified that such an individual would not be able to maintain competitive employment. *Id.*

On cross-examination, West's attorney proposed several further limitations to the VE and asked for their effect on an individual's ability to work. Tr. 86–88. West's attorney then cross-examined the VE about how she calculated the number of jobs available nationally for all the proposed work. Tr. 89–93.

The ALJ limited the hypothetical individual to light work and asked if there would be any transferable skills. Tr. 93. The VE testified that there would be no transferable skills at that level, but such an individual would be able to do unskilled work as storage facility rental clerk, laundry folder, or non-postal mail clerk. Tr. 93–94. The VE testified that those jobs were available at significant numbers nationally. Tr. 94. Before closing the hearing, West's attorney was afforded the opportunity to

cross-examine the VE again in response to the ALJ's altered hypothetical. Tr. 95–96.

The ALJ issued her decision on December 23, 2020, finding that West was not disabled from May 25, 2017, the alleged disability onset date, through June 30, 2019, the date West was last insured. Tr. 12–24.

### 3. Legal Standards

The Social Security Act provides disability insurance benefits to individuals with physical and mental disabilities who have contributed to the program. *See* 42 U.S.C. § 423. Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

The Commissioner uses a sequential, five-step approach to determine whether the claimant is disabled. *See Schofield v. Saul*, 950 F.3d 315, 317 (5th Cir. 2020); *see also* 20 C.F.R. § 404.1520(a)(4) (2017). The claimant bears the burden of proof on the first four steps, but the Commissioner bears the burden on the fifth step. *See Keel v. Saul*, 986 F.3d 551, 555 (5th Cir. 2021). A finding that the claimant is disabled or not disabled at any point in the five-step review terminates the analysis. 20 C.F.R. § 404.1520(a)(4) (2017).

This court's review of the ALJ's disability determination is "highly deferential," and the court asks, "only whether substantial evidence supports the decision and whether the correct legal standards were employed." *Garcia v. Berryhill*, 880 F.3d 700, 704 (5th Cir. 2018) (citations omitted). "A decision is supported by substantial evidence if 'credible evidentiary choices or medical findings support the decision.'" *Salmond v. Berryhill,* 892 F.3d 812, 817 (5th Cir. 2018) (quoting *Whitehead v. Colvin*, 820 F.3d 776, 779 (5th Cir. 2016)). "Substantial evidence is 'more than a mere scintilla but less than a preponderance.'" *Id.* (quoting *Williams v. Admin. Rev. Bd.*, 376 F.3d 471, 476 (5th Cir. 2004)). "It means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoting *Consol. Edison Co. of N.Y. v. NLRB*, 305 U.S. 197, 229 (1938)). The reviewing court must scrutinize the record to determine whether substantial evidence supports the ALJ's decision. *See Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005).

### 4. Analysis of the ALJ's Determination

### A. Step One

At step one, the ALJ must determine whether the claimant is involved in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i) (2017). A person engaged in substantial gainful activity is not disabled, regardless of his medical condition, age, education, or work experience. 20 C.F.R. § 404.1520(b) (2017). The ALJ found

that West had not engaged in substantial gainful activity since the alleged disability onset date. Tr. 15. This finding is not in dispute.

## B. Step Two

At step two, the ALJ determines whether any of the claimant's impairments are severe and have lasted or are expected to last a continuous period of at least twelve months. 20 C.F.R. § 404.1520(a)(4)(ii) (2017) (citing 20 C.F.R. § 404.1509 (2017)). An impairment is severe if it "significantly limits [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c) (2017).

An impairment is *not* severe "only if it is a slight abnormality having such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience." *Salmond*, 892 F.3d at 817 (emphasis omitted) *(quoting Loza v. Apfel,* 219 F.3d 378, 391 (5th Cir. 2000)); *see also* SSR 85-28, 1985 WL 56856, at *3 (Jan. 1, 1985) (stating that an impairment is not severe "when medical evidence establishes only a slight abnormality . . . which would have no more than a minimal effect on an individual's ability to work even if the individual's age, education, or work experience were specifically considered").

The ALJ correctly stated the severity standard and found that West's diabetes mellitus, thoracolumbar degenerative changes, mild osteoarthritis of the hands and

knees, bipolar 1 disorder, and major depressive disorders were severe impairments. Tr. 15. West does not dispute these findings.

## C. Step Three

At step three, the ALJ determines if any of the claimant's severe impairments meets or equals a listed impairment in appendix 1 (Listing). 20 C.F.R. § 404.1520(a)(4)(iii) (2017); *see also* 20 C.F.R. Part 404, Subpt. P, App'x 1 (2017). If all the criteria of a Listing are met or equaled, the claimant is considered disabled. 20 C.F.R. § 404.1520(d) (2017); *Whitehead*, 820 F.3d at 780–81.

The ALJ found that West's impairments or combination of impairments did not meet or medically equal the criteria of an impairment defined in the Listing. Tr. 15–17. The ALJ considered section 1.02 (major dysfunction of a joint) and 1.04 (degenerative disc disease) and concluded the criteria were not met. *Id.*

The ALJ also considered 12.04 (depression) and found West's impairments alone or in combination did not meet the listing criteria. Tr. 16. The ALJ applied the appropriate standards to find none of West's mental limitations rose above the level of mild or moderate limitations. *Id.* The ALJ also concluded West did not have a history of mental health treatment to support a finding of a severe mental impairment. Tr. 16–17.

The court's review of the record shows that substantial evidence supports the ALJ's step-three findings. West does not dispute these findings.

## D. Residual Functional Capacity

Before reaching the final two steps, the ALJ must assess the claimant's RFC "based on all the relevant medical and other evidence in [the] case record[.]" 20 C.F.R. § 404.1520(e) (2017); *see Perez*, 415 F.3d at 461–62 (citing 20 C.F.R. § 404.1545(a)(1)); SSR 96-8p, 1996 WL 374184, at *2–3, 5 (July 2, 1996). An RFC assessment is a determination of the most a claimant can do despite all physical and mental limitations. *Perez*, 415 F.3d at 461–62 (citing 20 C.F.R. § 404.1545(a)(1)); SSR 96-8p, 1996 WL 374184, at *2, 4 (July 2, 1996). "The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." SSR 96-8p, 1996 WL 374184, at *7 (July 2, 1996). The RFC determination is solely the responsibility of the ALJ. *See Taylor v. Astrue,* 706 F.3d 600, 602–03 (5th Cir. 2012); *see also* 20 C.F.R. § 404.1520b(c)(3) (2017). The ALJ has the authority to interpret medical evidence of diagnoses and results when formulating the RFC. *See Taylor,* 706 F.3d at 603.

The ALJ found that West had the following RFC:

> to perform medium work as defined in 20 CFR [§] 404.1567(c) except the claimant can frequently climb ramps and/or stairs, balance, stoop, kneel, crouch, and crawl. The claimant can occasionally climb ropes, ladders, or scaffolds. The claimant can frequently but not constantly handle and/or finger with the bilateral upper extremities. The claimant can understand, remember, and carry out detailed, but not complex instructions, free of any fast-paced production environment. The

claimant can frequently but not constantly interact with supervisors, co-workers, and the public.

Tr. 17.

The ALJ considered "all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence." *Id.* (citing 20 C.F.R. § 404.1529 and SSR 16-3p, 2017 WL 5180304 (Oct. 25, 2017)). The ALJ considered West's subjective testimony about his symptoms and included in her decision a thorough discussion of West's medical records including examinations, test results, and appointment history. Tr. 18–21. The ALJ found that West's testimony about the limitations caused by his symptoms was "not entirely consistent with the medical evidence and other evidence in the record." Tr. 18.

The ALJ discussed records showing that in 2017 West had a normal physical and psychological examination. Tr. 18 (citing Tr. 657). At that time, West had been diagnosed with uncontrolled type two diabetes and an unspecified single episode of major depressive disorder. *Id.* (citing Tr. 654). The records show that West was prescribed medication for his diabetes and depression. *Id.* (citing Tr. 654).

The ALJ reviewed records of West's emergency room visit on June 11, 2016, for left flank pain. Tr. 18 (citing Tr. 614). At that time West had normal range of motion in his back and musculoskeletal system. *Id.* (citing Tr. 614). The record confirms the ALJ's notation that West had been noncompliant with his diabetes

12

medication for the prior two weeks. *Id.* (citing Tr. 614). Review of the record confirms the ALJ's conclusion that West was discharged in stable condition after being diagnosed with a lower urinary tract infection and acute hyperglycemia. *Id.* (citing Tr. 618).

The ALJ considered a psychological consultative examination (CE) performed on March 21, 2018, by Dr. Gina L. Evans. Tr. 19 (citing Tr. 474–77). The ALJ found the psychological CE to demonstrate mostly normal findings except for reports of West feeling down, self-reported memory problems with better immediate than delayed memory, mild impairment in West's ability to concentrate, and difficulty counting serial sevens. *Id.* (citing 474–77). Dr. Evans had diagnosed West with major depressive disorder. *Id.* (citing Tr. 477).

The ALJ also considered an internal medicine CE performed on April 23, 2018, by Jyothi Achi, M.D. Tr. 19 (citing Tr. 478–484). The ALJ noted West's subjective complaints to Dr. Achi of having difficulty grasping items due to osteoarthritis in his hands. *Id.* (citing Tr. 481). The records show mostly normal findings except for difficulty holding small objects for extended periods, morning stiffness, uncontrolled diabetes mellitus, and West's emergency room visits when he ran out of medication. *Id.* (citing Tr. 481–83). The ALJ cited x-rays of West's hands and left knee which showed no abnormalities. *Id.* (citing Tr. 483).

The ALJ considered an August 20, 2018, report that West had been admitted to the hospital for suicidal ideation. Tr. 19 (citing Tr. 639–42). The ALJ noted that during his hospitalization West adjusted well to the prescribed medication. *Id.* (citing Tr. 642). The records show that West's condition improved, his suicidal ideation stopped, and he was discharged in stable condition with improved social functioning. *Id.* West was diagnosed with "major depressive disorder, single episode, severe without psychotic features" and "unspecified anxiety disorder." *Id.*

The ALJ described reports from February to May 2019 documenting West's improving psychological condition. Tr. 20 (citing Tr. 522, 531, 570–71, 574, 577, 579, 581, 594–95). The ALJ noted that the examinations revealed West was in a stable psychological condition with mental status examinations within normal limits. *Id.*

Based on her examination of the medical records, the ALJ found that West's allegation that he was disabled due to physical and mental conditions was not supported by the record. Tr. 20. The ALJ cited evidence throughout the record that contradicted West's testimony. *Id.* The ALJ noted that West's mental health treatment plan in place during the relevant period included seeking employment. *Id.* (citing Tr. 595). The ALJ also concluded that West's own testimony about his daily activities was inconsistent with West's allegations of disabling pain and mental

limitations. Tr. 20. For example, while West claims to be unable to grip with his hands, he admitted to working on engines to "give him something to do." *Id.*

The ALJ returned to Dr. Achi's CE. Tr. 21 (citing Tr. 478–484). Dr. Achi opined that West could sit for thirty minutes, stand for thirty minutes, could not lift more than ten pounds, could squat but not hop, could reach, handle, and finger feel, but would have difficulty holding a small object for ten minutes. *Id.* (citing Tr. 483). The ALJ noted that West showed full strength and range of motion, upper back stability within normal limits, negative bilateral straight leg raising tests, and normal grip. *Id.* The ALJ concluded that Dr. Achi's opinion was unpersuasive because it was internally inconsistent, not supported by the examination findings, and inconsistent with the medical record. *Id.*

The ALJ found that the state agency medical consultants' assessments were not persuasive because they were inconsistent with the entire record. Tr. 21. Brian Harper, M.D., and Mark Schade, Ph.D., both found that West had only non-severe physical impairments. Tr. 105, 106. The ALJ observed that the consultants' opinions were contradicted by diagnoses of osteoarthritis, major depression, and back pain with degenerative changes of the thoracolumbar spine, all of which were severe. *Id.* (citations omitted).

West argues that, having rejected all the medical opinion evidence, the ALJ's RFC determination lacks a medical basis. ECF No. 12-1 at 9–14. Citing *Ripley v.*

*Chater*, 97 F.3d 552 (5th Cir. 1995) and *Williams v. Astrue*, 355 F. App'x 828 (5th Cir. 2009), West argues that the ALJ erred because she "cannot independently determine Plaintiff's RFC without some evidence as to the effect of his conditions on his ability to work." ECF No. 12-1 at 11.

The regulations do not prohibit the ALJ from assessing the claimant's RFC based on other record evidence when he finds all medical opinions to be unpersuasive. *Cf.* 20 C.F.R. §§ 404.1520c, 404.1545 (2017). In fact, the regulations place the responsibility on the ALJ to assess a claimant's RFC based on all the relevant evidence. 20 C.F.R. §§ 404.1545, 404.1546 (2017); see also *Taylor*, 706 F.3d at 602–03.

In *Ripley,* the Fifth Circuit remanded the case because, among other errors, the ALJ found the claimant was capable of sedentary work "even though there was *no medical testimony* supporting this conclusion." 94 F.3d at 557 (emphasis added). The court pointed out that "[t]he absence of such a [medical source] statement . . . does not, in itself, make the record incomplete." *Id.* The court concluded that the ALJ's opinion was not supported by substantial evidence only after examining the record which contained "a vast amount of medical evidence" establishing an impairment which the ALJ did not consider in formulating the RFC. *Id.*

Similarly, in *Williams,* the Fifth Circuit remanded the case because "there was *no medical or other evidence* supporting the ALJ's [RFC] determination." 355 F. App'x at 831 (emphasis added). After discussing the ALJ's refusal to give controlling weight to the opinions of three doctors, the court held that there was "*no* evidence supporting the ALJ's finding." *Id.* (emphasis in original). The court also pointed to the fact that "the ALJ failed to consider [a] physical therapy discharge summary [that] directly contradicts the ALJ's finding." *Id.* The court concluded that, in the face of contradictory evidence and with no evidence supporting the ALJ's RFC finding, the RFC was not supported by substantial evidence. *Id.* at 832. Importantly, the court explained that *Ripley* stood for the proposition that "an ALJ may not rely on his own *unsupported* opinion as to the limitations presented by the [claimant's] medical conditions." *Id.* at 832 n.6 (citing *Ripley,* 97 F.3d at 557).

This case does not present the same problem that *Ripley* and *Williams* addressed. Here, the ALJ's RFC is supported by substantial medical and psychological evidence supporting the ALJ's conclusions. Tr. 18–30 (citing evaluations, testing, and diagnoses from the relevant period, as well as West's hearing testimony and statements to his treating physicians). "ALJs can draw their own conclusions based on accurate medical information." *Barrett v. Berryhill*, 906 F.3d 340, 343 (5th Cir. 2018). An ALJ may properly formulate an RFC that is not an adoption of any medical opinion while still basing his decision on substantial

evidence. *See Webster v. Kijakazi*, 19 F.4th 715, 719 (5th Cir. 2021) (concluding that although "the ALJ neither adopted the state agency report verbatim nor accepted the testimony of [a medical provider], it cannot be said that his decision was not based on substantial evidence or that he improperly applied the relevant legal standards").[3]

West cites to medical records which he argues contradict the ALJ's RFC assessment, but which the ALJ cited and accurately discussed within her RFC determination. *Compare* ECF No. 12-1 at 14–15 *with* Tr. 17–19. West's argument that the ALJ impermissibly inserted her own lay opinion "is actually the ALJ properly interpreting the medical evidence to determine [West's] capacity for work." *Taylor,* 706 F.3d at 603. As in *Taylor,* the ALJ cited to and discussed medical records that showed normal findings and that otherwise supported the limitations included in the RFC. Tr. 18–21; *Taylor,* 706 F.3d 603 (detailing medical evidence which supported the ALJ's RFC determination and contradicted the claimant's subjective complaints). Moreover, the ALJ explained how persuasive she found the medical

---

[3] Courts regularly affirm ALJ decisions where all of the medical opinion evidence has been rejected as unpersuasive. The courts consider such things as MRI and EEG test results, neurophysiological studies, treating physician remarks, physical examinations, and claimants' own testimony to be substantial evidence in support of an ALJ's RFC determination without medical opinion evidence. *See Taylor,* 706 F.3d at 603 (finding substantial evidence in MRI and EEG results, neurophysiological students, and treating physician remarks); *Garza v. Astrue,* 2013 WL 2432421 at *15–16 (S.D. Tex. June 3, 2013) (finding substantial evidence in physical examinations and general medical evidence); *Gutierrez v. Barnhart,* 2005 WL 1994289 at *7 (5th Cir. Aug. 19, 2005) (finding substantial evidence in the claimant's own testimony).

opinion evidence to be based on supportability and consistency with the entire medical record. Tr.21. The ALJ complied with the regulations. *See* 20 C.F.R. §§ 404.1520c(c) (citing 20 C.F.R. §§ 404.1520c(c)(1)–(5) (2017)), 404.1520c(b)(2), 404.1520c(a) (2017).

West also argues that having rejected all the medical opinion evidence, the ALJ should have secured another medical opinion. ECF No. 12-1 at 13. According to West, the ALJ failed to adequately develop the record. *Id.* at 13–14. When an ALJ makes "an informed decision based on sufficient facts" the ALJ fulfills the duty to develop the record. *Brown v. Saul,* 858 F. App'x 711, 713 (5th Cir. 2021) (quoting *Brock v. Chater*, 84 F.3d 726, 728 (5th Cir. 1996)); *see also* 20 C.F.R. § 404.1520b(a) (2017). The ALJ accurately cited to medical evidence throughout his RFC determination. Tr. 18–21 (citing evaluations, testing, and diagnoses from the relevant period). The ALJ only rejected the medical *opinion* evidence. The ALJ did not reject all the medical evidence. The ALJ did not err by not securing another medical opinion.

West also does not explain what further development of the record would have uncovered. The mere assertion "that additional beneficial evidence might have been gathered . . . is insufficient" to show prejudicial error. *Jones v. Astrue*, 691 F.3d 730, 735 (5th Cir. 2012). West's attorney did not object to any exhibits and offered no additional evidence at the second hearing on November 24, 2020. Tr. 65. Because

the record was sufficiently developed to allow the ALJ to make an informed decision, obtaining a further medical opinion was not necessary. *See Brown v. Saul*, 858 F. App'x 711, 713 (5th Cir. 2021) (stating that obtaining another medical opinion is required only if it is necessary to enable the ALJ to make the disability decision).

West has not shown that he was more limited than the ALJ found him to be. The ALJ's RFC determination is legally correct and supported by substantial evidence.

## E. Step Four

At step four, the ALJ determines whether the claimant can perform jobs he previously worked by comparing the RFC determination with the demands of the claimant's past relevant work. 20 C.F.R. § 404.1520(f) (2017); *see also Perez*, 415 F.3d at 462. If the claimant can perform his past work, he is not disabled. 20 C.F.R. § 404.1520(f) (2017). "Past relevant work" refers to substantial gainful activity performed within the last 15 years. *See* 20 C.F.R. § 404.1560(b)(1) (2017).

The ALJ determined at the hearing that West previously worked as an electrician in maintenance, residential, and commercial capacities. Tr. 82. The VE testified that under the DOT West's relevant work history would be classified as a maintenance electrician and electrician. Tr. 21, 82. The record demonstrates that the ALJ relied on the VE's testimony and found that West was not capable of performing

his past relevant work based on his RFC. Tr. 21–22, 83. West does not dispute these findings.

## F. Step Five

At step five, the ALJ determines whether the claimant can perform any other work by considering the claimant's RFC and other factors, including age, education, and past work experience. *Schofield*, 950 F.3d at 318 (quoting 20 C.F.R. § 404.1520(a)(4)(v)). If the claimant can perform other work available in the national economy, the claimant is not disabled. *Schofield*, 950 F.3d at 318 (citing 20 C.F.R. § 404.1520(g)).

The ALJ found that West could perform jobs that exist in significant numbers in the national economy. Tr. 22–24. The ALJ relied on the VE's hearing testimony that West had gained transferable skills for and would be able to work as a semi-skilled electricians helper. Tr. 23, 83. The VE testified that an individual of West's age, education, and RFC would be able to work unskilled positions as a warehouse worker or linen clerk. Tr. 23, 85. West's attorney thoroughly cross-examined the VE. Tr. 86–95.

Because the VE's testimony was based on a hypothetical question that incorporated all the limitations reasonably recognized by the ALJ and the VE was cross examined, the VE's testimony is substantial evidence supporting the ALJ's step-five determination. *See Masterson v. Barnhart*, 309 F.3d 267, 273–74 (5th Cir.

2002) (holding that the ALJ properly relied on the VE's testimony because the ALJ "scrupulously incorporated" all the limitations "supported by the evidence and recognized by the ALJ" and gave an opportunity for cross-examination). West does not independently dispute the ALJ's step-five findings.

The court's review of the administrative record reveals that the ALJ employed the correct legal rules and that the findings at each of the five steps were supported by substantial evidence.

## 5. Conclusion

The ALJ's decision denying social security benefits is consistent with the law and supported by substantial evidence. There is no genuine issue of material fact, and summary judgment is appropriate. Fed. R. Civ. P. 56(a), (c). Accordingly, the court recommends that Plaintiff's motion for summary judgment be denied, that Defendant's motion for summary judgment be granted, and that the final decision of the Commissioner be affirmed.

The parties have fourteen days from service of this Memorandum and Recommendation to file written objections. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72. Failure to timely file objections will preclude appellate review of factual findings or legal conclusions, except for plain error. *See Thomas v. Arn*, 474 U.S. 140, 147–49 (1985); *Rodriguez v. Bowen*, 857 F.2d 275, 276–77 (5th Cir. 1988).

Signed at Houston, Texas on August 26, 2022.

_____

Peter Bray
United States Magistrate Judge